## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Dart Transit Company, | No. 24-cv-3686 (KMM/SGE) |
| Plaintiff, | |
| v. | |
| | **ORDER** |
| Paccar, Inc., Paccar Engine Company, Kenworth Truck Company, and Peterbilt Motors Company, | |
| Defendants. | |

Plaintiff Dart Transit Company ("Dart Transit") filed this action asserting claims for breach of express warranty, breach of implied warranty, and for violations of the Minnesota Prevention of Consumer Fraud Act ("MCFA") against Defendants Paccar, Inc., Paccar Engine Company, Kenworth Truck Company, and Peterbilt Motors Company. Defendants move to dismiss the Complaint for failure to state a claim. As explained below, the Defendants' motion is granted in part and denied in part.

### BACKGROUND

Defendant Paccar, Inc. ("Paccar") manufactures heavy-duty commercial vehicles, which it sells through its unincorporated divisions Kenworth Truck Company ("Kenworth") and Peterbilt Motors Company ("Peterbilt"). Since 2010, Paccar has manufactured MX-13 diesel engines for its Peterbilt and Kenworth trucks. Paccar Engine Company ("PEC") is a Paccar subsidiary. PEC manufactures the MX-13 engines.

Dart Transit is a trucking company that operates a fleet of commercial trucks, and it has been a Paccar customer for decades. Paccar representatives regularly visited Dart Transit in Minnesota over the years. Defendants told Dart Transit that if it purchased vehicles with the MX-13 engines, Defendants would "stand behind the engines and that the vehicles would retain their value." Dart Transit allegedly relied on these representations in purchasing and leasing vehicles from Paccar. Specifically, beginning in 2017, Highway Sales, Inc., an affiliate of Dart Transit, purchased 498 vehicles from Paccar. These nearly 500 vehicles spanned the model years 2018, 2019, 2020. Dart Transit then leased those vehicles from Highway Sales. All 498 trucks had MX-13 engines. Dart Transit alleges that it used the trucks as part of its fleet.

Included in the price of each of the vehicles is a basic warranty from Paccar. The base warranty applies for 24 months, 250,000 miles, or 6,250 hours, and protects against defects in materials and factory workmanship. Dart Transit purchased a limited, extended warranty with each of the vehicles at additional cost. The extended warranty covers the engine for 60 months or 500,000 miles. The extended warranty entitles Dart Transit to repair or replacement of parts that are defective in materials or workmanship, but it also expressly disclaims the availability of any other remedy.[1]

---

[1] Meyers Decl., Ex. 1, Limited Warranty Agreement (Doc. 17-1). In relevant parts, the warranty states "Your sole and exclusive remedy against Kenworth arising from your purchase and use of this vehicle is limited to the repair or replacement of warrantable failures at authorized United States and Canadian Kenworth Dealers. . . . This limited warranty is the sole warranty made by Kenworth. Except for the above limited warranty, Kenworth makes no other warranties express or implied. Kenworth expressly disclaims any warranty of merchantability or fitness for a particular purpose." *Id.* at 1 (emphasis and capitalization removed).

According to the complaint, "Defendants" made certain representations about the Paccar engines that Dart Transit alleges were false. For example, Defendants represented the following:

- The engine "incorporates precision manufacturing, advanced design and premium materials to deliver best-in-class performance, durability and operating efficiency."
- In addition to superior performance and fuel efficiency," Paccar's engines are environmentally friendly.
- As stated in marketing brochures, the MX-13 engines achieved the lowest possible fuel consumption, emissions and noise levels and have a life of 1,000,000 miles.
- "[T]he Engines had been properly tested and tried for reliability and durability, in all climates and operating conditions, and that the Engines had undergone over 300,000 hours of lab testing and 50 million miles of real-world work in North America."

Compl. ¶¶ 11–13.

However, Defendants allegedly omitted material information from these statements or made other materially false and misleading statements about the reliability, durability, endurance, and other characteristics of the engines. Defendants also allegedly made false promises to repair and stand behind the engines.

Dart Transit alleges that, in fact, the MX-13 engines had several defects, which are caused by "inherent deficiencies in the design, testing, fabrication, and manufacture" of the engines, and the defects "were and are known to Defendants." Compl. ¶ 23. One such defect involves the chassis wiring harnesses. The harnesses were allegedly installed with too much tension on the wiring, which causes the harnesses to be damaged internally or chafed, resulting in damage to the wiring. As a result of the chassis wiring harness defect,

the vehicles displayed active fault codes and safety systems became inoperative. *Id.* ¶¶ 15–16.

The trucks also had camshaft failures caused by an alleged defect where the "exhaust lobe" on the camshaft experienced excessive wear on the surface between the camshaft lobe and the lifter. As a result of the camshaft failures, the vehicles experienced mainshaft bearing failures on several cylinders, requiring either replacement of the entire camshaft or the whole engine. *Id.* ¶¶ 17–18.

Another failure was attributable to "excessive fretting," which refers to damage that occurs when metal surfaces contact each other through repeated rubbing or sliding motions. Fretting causes material transfer and corrosion, leading to mechanical wear and potential engine failure. The trucks experienced excessive fretting on the engine block to the cylinder liner, which can lead to catastrophic engine failure. *Id.* ¶ 19–22.

Defendants have known about the chassis wiring harness failure, the camshaft failure, and the fretting failure since putting the relevant vehicles on the market. *Id.* ¶ 24. Defendants have also known that these issues cause owners and lessees of the vehicles to incur significant costs. According to the Complaint, "Defendants" knew or should have known, since at least 2009, that their parts and components were not sufficiently robust to achieve the represented levels of reliability and durability. *Id.* ¶ 25. Defendants tracked warranty claims starting in 2010, providing Defendants with information about the existence of these defects and knowledge of the fact that the defects cause their vehicles to be inoperable for extended periods. *Id.* ¶ 27.

Despite the knowledge that the chassis wiring harness failure, the camshaft failure, and the fretting failure essentially rendered vehicles inoperable, Defendants authorized only minor adjustment or replacement of failed components with other defective components that Defendants knew would not correct the underlying problems. *Id.* ¶ 28. According to the Complaint, Defendants have exclusive knowledge or access to material facts about the vehicles and their engines that were not and are not known or reasonably discoverable by parties purchasing the vehicles. *Id.* ¶ 29.

Dart Transit alleges that Defendants did not disclose the chassis wiring harness failure, the camshaft failure, or the fretting failure to Dart Transit. If Dart Transit had been told of these defects, it would not have leased the vehicles. Because the vehicles repeatedly experience engine failures that are not corrected by repeated, costly, and time-consuming warranty work performed by Defendants, the vehicles are unreliable. Despite the Defendants' warranty repairs, the problems have not been corrected. The problems with the vehicles also disrupted Dart Transit's operations due to the large number of vehicles that were affected and how long Dart Transit had to wait for delivery of parts and completion of repairs. And although Dart Transit alleges that it is entitled to repair and replacement of defective parts under the warranty, Defendants' inability to solve the problems through attempted repairs and replacements leaves Dart Transit without any effective remedy under the limited warranty. *Id.* ¶¶ 34–41. In other words, "Dart [Transit] has offered Defendants numerous opportunities to correct the Vehicles, to no avail." *Id.* ¶ 42.

Dart alleges that it has suffered losses because of the defective engines. This includes out-of-pocket loss associate with multiple catastrophic vehicle failures and attempted repairs to the vehicle. Dart has lost revenue associated with significant downtime. It has experienced increased costs due to excessive driver turnover. Dart did not receive the value bargained for when it purchased the vehicles, and the vehicles have a substantially lower re-sale value because of the defects. *Id.* ¶¶ 53–58.

## DISCUSSION

Defendants raise several issues in their motion to dismiss. First, they argue that the Court should dismiss all claims against PEC, Kenworth, and Peterbilt. Second, Defendants argue that Plaintiff fails to state any express warranty claims because the allegations of breach and pre-suit notice are insufficient. Defendants also ask the Court to dismiss Plaintiff's claims for consequential damages as part of the express warranty claim, which they argue contradict the warranty's sole-remedy provision. Third, Defendants contend that Plaintiff's implied warranty claims fail because Paccar disclaimed the existence of any implied warranties in writing, there are no allegations that would allow Plaintiff to avoid that disclaimer, and any implied warranty claim is barred by the statute of limitations. Finally, Defendants argue that Plaintiff's claims under the MCFA must be dismissed because the Complaint does not comply with Rule 9(b)'s particularity requirement for claims sounding in fraud, Plaintiff is a "merchant" that cannot maintain a claim under the MCFA, and Plaintiff has failed to allege a public benefit.

## I.    Legal Standard

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim is one where the facts alleged allows the court to reasonably infer that the defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a Rule 12(b)(6) motion, courts accept the factual allegations in the complaint as true. *Dalen v. Harpsted*, 123 F.4th 900, 903 (8th Cir. 2024). Courts also disregard "matters outside the pleadings," though they "may consider those materials that are necessarily embraced by the pleadings" such as "documents whose contents are alleged in a complaint and whose authenticity no party questions." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 998 (8th Cir. 2016) (cleaned up); *see also* Fed. R. Civ. P. 12(d); *Hageman v. Barton*, 817 F.3d 611, 620 n.8 (8th Cir. 2016) (including "matters of public record" among the materials courts may consider on a Rule 12(b)(6) motion).

"Fraud claims must satisfy a heightened pleading standard." *Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 935 (D. Minn. 2022). Rule 9(b) requires allegations of fraud to be stated with particularity. Fed. R. Civ. P. 9(b). To comply with that requirement the plaintiff must allege the "who, what, where, when, and how of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009).

## II.    PEC, Kenworth, and Peterbilt

Defendants argue that the Court should dismiss Defendants Kenworth and Peterbilt because they are unincorporated divisions of Paccar, and therefore Plaintiff cannot state a claim for relief against them as separate entities. Dart Transit agrees that Kenworth and Peterbilt may be dismissed "based on Defendants' confirmation that they are unincorporated divisions of Defendant PACCAR, Inc." Pl.'s Opp'n at 6 n.4. Accordingly, Defendants' motion is granted in this respect.

Next, Defendants argue that the Court should dismiss Dart Transit's claims against PEC because the Complaint contains no allegations concerning PEC's alleged conduct. Dart Transit opposes dismissal, asserting that it has adequately placed PEC on notice of the claims against it and because PEC allegedly "collaborated in wrongdoing" with Paccar. Pl.'s Opp'n 5. Based on this Court's careful review of the Complaint, the Court finds that PEC should be dismissed because Plaintiff has failed to allege facts showing that PEC could be liable on any of the claims alleged.

The only allegations concerning PEC in the Complaint are that it is a subsidiary of Paccar and manufactures the MX-13 engines. Plaintiff does not allege that PEC provided any warranty to Dart Transit or to the affiliate that purchased the trucks. Nor is PEC alleged to have made any representations to Plaintiff that could form the basis of a fraud claim under MCFA. The limited allegations involving PEC itself do not satisfy the standards of notice pleading because they do not provide the grounds on which any claim against PEC rests. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795–96 (8th Cir. 2021) ("While a plaintiff need not set forth detailed factual allegations, or

specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests.") (internal quotations omitted). Plaintiff has improperly lumped PEC together with the other defendants in its allegations, which fails to adequately provide notice of who did what to whom. *Qwest Commc'ns Co., LLC v. Free Conferencing*, 990 F. Supp. 2d 953, 969 (D. Minn. 2014) (lumping all defendants together does not sufficiently allege who did what to whom and does not provide adequate notice of the grounds for the claim). Plaintiff's suggestion in its briefing that PEC should not be dismissed because it "collaborated in wrongdoing" with Paccar does not suffice. There are no allegations regarding such alleged collaboration in the Complaint itself, and the cases Plaintiff cites in support of this argument are unpersuasive.[2]

Accordingly, Defendants' motion is granted to the extent that PEC, Kenworth, and Peterbilt are dismissed.

## III.    Breach of Express Warranty

Paccar raises four distinct bases for dismissal of Dart Transit's express warranty claims. First, Paccar suggests that the allegations of breach are insufficient because they lack several important details required for notice pleading. Second, Paccar argues that Plaintiff's substantive allegations contradict the assertion that the warranty has been breached. Third, Paccar contends that Plaintiff has failed to adequately allege pre-suit

---

[2] The Court finds that neither *Whitehurst v. G&A Rest. Mgmt., Inc.*, No. 2:20-cv-67-FM-60MRM-TPB, 2020 WL 2062462, at *2 (M.D. Fla. Apr. 29, 2020), nor *Espinosa v. Bluemercury, Inc.*, No. 16-cv-0702-JST, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017), supports allowing Plaintiff's claims to proceed against PEC in this action.

notice. And fourth, Paccar argues that consequential damages are contrary to the limited warranty's sole-remedy provision, which allows only for repair or replacement of defective components. As explained below, the Court rejects the first three arguments, but agrees that Dart Transit has failed to state a claim for consequential damages.

The elements of a breach of express warranty claim under Minnesota law are (1) existence of a warranty, (2) a breach, and (3) a causal link between the breach and the alleged harm. *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009) (quoting *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52–53 (Minn. 1982)). Minnesota courts also require plaintiffs to provide pre-suit notice to the defendant, pursuant to Minn. Stat. § 336.2-607(3)(a), to sustain a claim for breach of an express warranty. *Wheeler v. Subaru of Am., Inc.*, 451 F. Supp. 3d 1034, 1037 (D. Minn. 2020).

### A. Sufficiency of Allegations and Negating Assertion of Breach

First, the Court addresses Paccar's arguments that the allegations fail to provide sufficient detail of how the warranty was breached and that the allegations negate any suggestion of breach. Paccar argues that Dart Transit fails to provide any detail regarding problems with specific trucks, how many trucks are at issue, whether alleged failures were singular occurrences or repeat issues, and whether the trucks were properly and sufficiently maintained. Paccar further argues that the facts Plaintiff does allege actually negate a showing of breach of the warranty because those facts show that Plaintiff is attempting to pursue a design-defect theory, and the express warranty applies only to manufacturing defects. Neither of these arguments requires dismissal of the express warranty claims at this stage of the proceedings.

10

Paccar cites no authority for the proposition that a breach of warranty claim like Dart Transit's must itemize the precise problem that affected each truck or otherwise provide the granular detail Paccar seems to suggest it should receive through the pleading itself. The details Paccar argues are lacking are precisely the kinds of information that discovery will quickly reveal, and Plaintiff has provided sufficient notice that there are at least three categories of errors that have plagued some large number of the 498 trucks Plaintiff obtained from Paccar—namely the fretting, engine wire harness, and camshaft failures. Moreover, Paccar's argument that Plaintiff has essentially alleged nothing other than a design defect that is uncovered by the express warranty ignores the plain language of the Complaint. Dart Transit expressly alleges that the defects complained of are defects in material or workmanship. It is true that the Complaint also mentions defective design, and if discovery reveals that all the alleged defects at issue in this case fall within a category that is not covered by the express warranty, then Dart Transit may be unable to obtain any relief. But at this stage of the proceedings, we must accept as true the factual allegation that the defects at issue are defects in material or workmanship that are covered by the express warranty.

Accordingly, the Court denies the motion to dismiss to the extent Paccar argues that Plaintiff's allegations lack sufficient detail and negate any assertion of breach.

## B. Pre-Suit Notice

Next, Paccar argues that Dart Transit fails to allege that it gave sufficient notice of a breach prior to filing suit. Paccar asserts that Plaintiff alleges only that it notified

Defendants of problems with the vehicles by bringing them to Defendants' authorized vendors for repairs, but more is required under Minnesota law. The Court disagrees.

As noted above, courts have held that a plaintiff asserting a breach-of-express-warranty claim must allege that it provided the defendant notice of the breach prior to filing suit. *Drobnak*, 561 F.3d at 784 ("Under Minnesota law, a buyer must 'notify the seller of breach or be barred from any remedy.'") (quoting Minn. Stat. § 336.2-607(3)(a)); *Truesdale v. Friedman*, 132 N.W.2d 854, 861 (Minn. 1965) ("The Minnesota authorities have uniformly required notice to the seller in situations alleging breach of warranty."). "[T]he notice requirement serves three purposes: (1) notice provides the seller an opportunity to correct any defect; (2) notice affords the seller an opportunity to prepare for negotiation and litigation; and (3) notice provides the seller an opportunity to investigate the claims independently while the products remain in a relatively pristine state." *Drobnak*, 561 F.3d at 784–85.

> Notice is sufficient so long as it lets the seller know that the transaction is still troublesome and must be watched. . . . The bar for sufficiency is low, but notice is nevertheless important because it informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

*Id.* at 784 (quoting Minn. Stat. § 336.2-607(3)(a), cmt. 4) (cleaned up). But the notice need not be legalistic or overly detailed. "[A] buyer need only notify the seller that he or she is unsatisfied with the product, but need not specifically state that there was a breach of warranty to satisfy the notice requirement." *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1007 (D. Minn. 2017); *see also Marvin Lumber & Cedar Co. v. PPG*

*Indus., Inc.*, 401 F.3d 901, 909 (8th Cir. 2005) (finding the district court did not err in granting the plaintiff's motion for judgment as a matter of law on the issue of notice where the plaintiff told the defendant it was having rot problems with the wood products it purchased that ran counter to the warranty of future performance and that it would like the defendant to pay, but "did not mention specifically the warranty upon which [plaintiff] ultimately prevailed").

According to Paccar, Dart Transit fails to allege facts indicating that it provided Paccar with any notice of breach, and the Complaint indicates only that Dart Transit notified Paccar there were issues with the trucks. While Paccar identifies language in some cases supporting its position that simply notifying the seller of "the facts" is not the same as notifying the seller "of the breach," *see Drobnak*, 561 F.3d at 785 (quoting *Am. Mfg. Co. v. U.S. Shipping Bd. Emergency Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)), Paccar does not identify any case from the Eighth Circuit Court of Appeals or Minnesota's appellate courts dismissing a complaint with allegations of pre-suit notice akin to those in Dart Transit's pleading.[3]

Dart Transit's allegations support an inference that it brought a substantial number of the 498 trucks that it purchased in for repairs on repeated occasions, often for the same

---

[3] As other courts have observed, "[t]he court in *Drobnak* did not distinguish between notification of a specific problem and specific notification of a breach of warranty. . . . Indeed, the facts of the case did not require the Eighth Circuit to decide that issue, since the plaintiffs provided no notice of either type." *Podpeskar v. Makita U.S.A., Inc.*, 247 F. Supp. 3d 1001, 1007 (D. Minn. 2017). And in *Truesdale*, another case cited by Paccar, the issue was not one of notification of a problem versus notification of a breach, but rather whether the notice was provided within a reasonable time. 132 N.W.2d at 861–62 (discussing cases that indicate "how long a delay would be considered unreasonable as a matter of law").

problem, and Paccar's efforts to repair the vehicles or replace the defective components repeatedly failed. Under these circumstances, Dart Transit has sufficiently alleged facts indicating that Paccar knew the transactions were still troublesome and needed to be watched, so at this stage, "the purposes of the notice requirement are sufficiently met [.]" *Podpeskar*, 247 F. Supp. 3d at 1007. Paccar "had an opportunity to correct the defect[s] by replacing or fixing" the allegedly defective vehicle components, "knew to look at the [Dart Transit] transaction and could have prepared for negotiation based on [Dart Transit's] complaint[s]." *Id.*

For these reasons, the Court denies Paccar's motion to dismiss the express warranty claims for lack of pre-suit notice.

### C. Consequential Damages

Defendants argue that Plaintiff's Complaint improperly seeks consequential damages for the alleged breach of Paccar's express warranty because the limited warranty expressly disclaims the availability of such damages. Specifically, the limited warranty states:

> IT IS AGREED THAT [PACCAR] SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES INCLUDING, BUT NOT LIMITED TO: LOSS OF INCOME OR LOST PROFITS; VEHICLE DOWNTIME; THIRD PARTY DAMAGE, INCLUDING DAMAGE OR LOSS TO OTHER VEHICLES OR PROPERTY, ATTACHMENTS, TRAILERS AND CARGO; LOSS OR DAMAGE TO PERSONAL CONTENTS; COMMUNICATION EXPENSES; LODGING AND/OR MEAL EXPENSES; FINES; APPLICABLE TAXES OR BUSINESS COSTS OR LOSSES; ATTORNEY'S FEES; AND ANY LIABILITY YOU MAY HAVE IN RESPECT TO ANY OTHER PERSON OR ENTITY.

14

Limited Warranty Agreement at 1. Based on this provision, Paccar asserts that, as a matter of law, it cannot be held liable for any consequential damages arising from an alleged breach of warranty. As explained below, the Court agrees.

"The U.C.C. encourages negotiated agreements in commercial transactions, including warranties and limitations." *Transp. Corp. of Am., Inc. v. Int'l Bus. Bach. Inc.*, 30 F.3d 953, 959–60 (8th Cir. 1994). The UCC allows parties to limit the remedies available to a buyer in Minnesota. *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1088 (D. Minn. 2017) (citing Minn. Stat. §§ 336.2-102, 336.2-314). One way in which the parties can strike their bargain is to limit or exclude consequential damages. *Id.* (citing Minn. Stat. § 336.2-719(3)). Such a limitation or exclusion will only be disregarded where it is unconscionable. *See id.* "An exclusion of consequential damages set forth in advance in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law." *Transp. Corp. of Am.*, 30 F.3d at 960.

Here, the Complaint plainly seeks the recovery of consequential damages,[4] and Dart Transit does not argue otherwise. Nor does Dart Transit dispute that the express warranty disclaims the availability of any incidental or consequential damages. Instead,

---

[4] Compl. ¶ 58 ("Dart has suffered ascertainable loss as a result of the defective Engines, including, but not limited to, out-of-pocket loss associated with multiple catastrophic Vehicle failures and attempted repairs to the Vehicles, loss of revenue associated with extensive downtime, costs due to excessive driver turnover, failure to receive the value bargained for when it purchased the Vehicles, and substantially lower re-sale values associated with the Vehicles."). For a discussion of the nature of consequential damages under Minnesota's version of the UCC, see *Far East Aluminium Works Co. Ltd. v. Viracon, Inc.*, 27 F.4th 1361, 1365 (8th Cir. 2022) (citing Minn. Stat. § 336.2-715(2)(a)–(b)).

Dart Transit argues that it can pursue consequential damages in this case because it has alleged facts showing that the exclusive repair-or-replace remedy in the express warranty fails of its essential purpose and that the disclaimer of incidental and consequential damages is unconscionable. The Court disagrees.

"[U]nder Minnesota law, in a consumer transaction under the UCC, when a limited remedy fails of its essential purpose, a separate clause excluding consequential and/or incidental damages is also unenforceable even if it is not unconscionable." *Luckey*, 245 F. Supp. 3d at 1089; *Jacobs v. Rosemount Dodge-Winnebago S.*, 310 N.W.2d 71, 77–78 (Minn. 1981); *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 357 (Minn. 1977). However, when a sale of goods is between merchants, if the limited remedy fails of its essential purpose, the consequential damage exclusion is still valid unless it is unconscionable." *Luckey*, 245 F. Fupp. 3d at 1089; *Int'l Fin. Services, Inc. v. Franz*, 534 N.W.2d 261, 269 (Minn. 1995); *Talyor Investment Corp. v. Weil*, 169 F. Supp. 2d 1046 (D. Minn. 2001).

The problem for Dart Transit is that the allegations in the Complaint demonstrate that it is not an ordinary consumer, but a sophisticated trucking company that purchased a large number of vehicles from Paccar to use as part of its trucking fleet. As such, even if the allegations support an inference that the limited repair-or-replacement remedy in

Paccar's warranty failed of its essential purpose,[5] because Dart Transit is a merchant, under *Franz* and *Weil* it would also have to show that the consequential damages exclusion is unconscionable. To show unconscionability, the Complaint must allege that Dart Transit "had no meaningful choice but to accept the contract term as offered and that the terms of the contract were unreasonably favorable to the other party." *Kruger v. Lely N. Am., Inc.*, 518 F. supp. 3d 1281, 1291 (D. Minn. 2021); *see also Vierkant v. AMCO Ins. Co.*, 543 N.W.2d 117, 120 (Minn. Ct. App. 1996 (stating that a contract is unconscionable when it is an agreement that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other").

The Complaint does not plausibly allege unconscionability. Courts have noted that "unconscionability rarely exists in a commercial setting involving parties of equal bargaining power." *Am. Elec. Power Co., Inc. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 458 n.41 (S.D.N.Y. 1976) (cited in *Franz*, 534 N.W.2d at 267). Plaintiff makes only a conclusory assertion that the parties have unequal bargaining power because Paccar is a larger and more well-resourced company. But the reasonable inference from the facts alleged in the Complaint is that both Dart Transit and Paccar are experienced business

---

[5] "An exclusive remedy fails of its essential purpose 'if circumstances arise to deprive the limiting clause of its meaning or one party of the substantial value of its bargain.'" *Luckey*, 245 F. Supp. 3d at 1090 (quoting *Weil*, 169 F. Supp. 2d at 1059). One way an exclusive remedy may fail of its essential purpose is where the seller has tried but failed to repair or replace the defective component. *See id.* at 1090–91. Dart Transit has alleged that Paccar tried to repair the trucks and replace existing components, but after being given multiple opportunities to do so with many of the vehicles, its efforts failed. At this stage, these allegations are sufficient to state a claim that the exclusive remedy fails of its essential purpose.

parties who agreed to allocate the risks between them in the extended limited warranty. *Far E. Aluminium Works Co. Ltd. v. Viracon, Inc.*, 520 F. Supp. 3d 1106, 1113 (D. Minn. 2021) (stating that "an exclusion of consequential damages . . . in a commercial agreement between experienced business parties represents a bargained-for allocation of risk that is conscionable as a matter of law"). Dart Transit does not "allege that it tried, without success, to negotiate more favorable terms, nor does it allege that it tried to find other vendors" from which to purchase its vehicles. *Id.*; *see also Kruger*, 518 F. Supp. 3d at 1291 (noting that the plaintiff had "other meaningful choices" including purchasing its robots "from a different manufacturer" or not at all). And the fact that Minnesota law permits the kind of disclaimer at issue here "weighs heavily against finding that [Paccar's] statutorily-permissible disclaimers were unreasonably favorable to it." *Kruger*, 518 F. supp. 3d at 1291.

Dart Transit next argues that the exclusion of consequential damages in the express warranty is unconscionable because the Complaint alleges that Paccar knew about latent defects in the vehicles at the time it sold the trucks and failed to disclose those defects to Dart Transit.[6] However, Plaintiff's allegations of "knowing and active concealment" are not accompanied by supporting facts. Its conclusory assertions do not

---

[6] Dart Transit relies exclusively on cases involving alleged failure to disclose defects to individual consumers who purchased items for personal use. *See, e.g.*, *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 893 (D. Minn. 2021); *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 672 (D. Minn. 2021); *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1159 (D. Minn. 2023); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1144 (D. Minn. 2016). The Court has not located a case comparable to this one where a court has found a disclaimer of consequential damages in a warranty to be unconscionable where the contract is entered between sophisticated commercial entities.

state a plausible claim of unconscionability of the consequential damages exclusion. *See Petersen v. England*, No. 09-cv-2850 (JRT/JSM), 2010 WL 3893797, at *8–9 (D. Minn. Sept. 30, 2010) ("Given plaintiffs' conclusory allegations, plaintiffs' 'unconscionability' claim against Wells Fargo is not plausible on its face and must be dismissed"); *see also J. Supor & Son Trucking & Rigging Co., Inc. v. Kenworth Truck Co.*, No. 2:17-cv-8057 (SDW)(CLW), 2018 WL 901719, at *2 (D.N.J. Feb. 15, 2018) (finding allegations insufficient to show unconscionability of a Paccar warranty where the plaintiff, "a trucking and rigging corporation," was "a sophisticated buyer with experience in making" purchases of Paccar's trucks and did not allege "that the contract was entered into under duress"); *T.J. McDermott Transp. Co., Inc. v. Cummins, Inc.*, No. 14-cv-04209 (WHW)(CLW), 2015 WL 1119475, at * (D.N.J. Mar. 11, 2015) (finding that the plaintiff failed to allege unconscionability based on defendant's alleged knowledge of defects where the plaintiff was a sophisticated commercial transportation company that had relevant business experience purchasing long-haul tractors for its commercial operations).

Moreover, the Court notes that parties to a transaction generally have no duty to disclose material facts to one another. *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014). "A duty to disclose may exist when a fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed." *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002). This is not a situation where Plaintiff has alleged a special relationship existed between itself and Paccar; rather, the facts in the Complaint show that this was a series of arms-length transactions between two sophisticated

commercial parties. To the extent that Plaintiff suggests that Paccar concealed defects that were "peculiarly within [its] own knowledge," *see Mooney v. UnitedHealth Group Inc.*, A13-2093, 2014 WL 3558178, at *4 (Minn. Ct. App. July 21, 2014), the Complaint contradicts that assertion by alleging that the "problems with the MX13 Engines are well-known in the trucking industry," Compl. ¶ 57. Thus, Plaintiff's argument that the disclaimer of consequential damages is unconscionable based on Paccar's alleged fraudulent concealment of defects in the MX-13 engines is undermined by its own pleading.

For these reasons, the Court concludes that Plaintiff has failed to allege facts that would allow it to avoid the warranty's disclaimer on consequential damages.

## IV.    Breach of Implied Warranty

Paccar also seeks dismissal of Dart Transit's breach-of-implied-warranty claims. "Under Minnesota law, an implied warranty of merchantability requires that goods be 'fit for the ordinary purposes for which such goods are used.'" *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 826 (D. Minn. 2010) (quoting Minn. Stat. § 336.2-314(2)(c)). A plaintiff can show a breach of this implied warranty when "a product is defective to a normal buyer making ordinary use of the product." *Id.* (quoting *Carrey v. Chaparral Boats, Inc.*, 514 F. Supp. 2d 1152, 1156 (D. Minn. 2007)). "In asserting breach of an implied warranty of merchantability, 'the plaintiff must show not only the breach but also a causal relationship between the breach and the loss sustained.'" *All Metro Glass, Inc. v. Tubelite, Inc.*, 227 F. Supp. 3d 1007, 1017 (D. Minn. 2016) (quoting *Int'l Fin. Servs., Inc. v. Franz*, 534 N.W.2d 261, 266 (Minn. 1995)).

However, Minnesota's version of the UCC allows a manufacturer to disclaim an implied warranty of merchantability or fitness for a particular purpose. Minn. Stat. § 336.2-316(2). If an express warranty contains express language that is conspicuous and mentions merchantability and fitness, then it is effective and defeats a claim for breach of these implied warranties. *Id.*; *Far E. Aluminium Works Co. Ltd. v. Viracon, Inc.*, 520 F. Supp. 3d 1106, 1114 (D. Minn. 2021).

Here, the express warranty states in writing that Paccar provides no implied warranties of merchantability or fitness for a particular purpose. It does so in clear, conspicuous type—it is in all capital letters on the first page of the express warranty.

> This limited warranty is the sole warranty made by [Paccar]. Except for the above limited warranty, [Paccar] makes no other warranties, express or implied. [Paccar] EXPRESSLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Limited Warranty Agreement at 1. Plaintiff does not argue otherwise, and the Court finds that the express warranty effectively disclaimed the existence of any implied warranties. Minn. Stat. § 336.1-201(b)(10) (providing that a term is conspicuous when it is "so written, displayed, or presented that, based on the totality of circumstances, a reasonable person against which it is to operate ought to have noticed it" and that the determination of whether a term is conspicuous is "a decision for the court"); *see also T.J. McDermott Transp. Co., Inc.*, 2015 WL 1119475, at *12 (concluding, under identical provisions of New Jersey's version of the UCC, that defendants' effectively disclaimed implied warranties of merchantability and fitness for a particular purpose).

To avoid dismissal of its implied warranty claims, Dart Transit argues that Paccar's disclaimer is unenforceable because Paccar failed to disclose latent defects in the vehicles and because the limited remedy fails of its essential purpose. The Court rejects these arguments for the same reasons that it finds Plaintiff failed to adequately allege unconscionability in the context of Plaintiff's efforts to avoid the effect of the exclusion of consequential damages. *See T.J. McDermott Transp. Co., Inc.*, 2015 WL 1119475, at *12 ("Because the Court earlier found Defendants' warranty agreements not unconscionable, these conspicuous disclaimers of implied warranties bar Plaintiff's claims for breach of the implied warranty of merchantability.").

Accordingly, the Court grants the motion to dismiss Plaintiff's breach-of-implied-warranty claims.[7]

## V.    MCFA

Finally, Paccar seeks dismissal of Dart Transit's claim under the Minnesota Prevention of Consumer Fraud Act, arguing that (1) the Complaint does not comply with Rule 9(b) and fails to allege any actionable misrepresentations, (2) no MCFA claim can proceed because Plaintiff is a "merchant," and (3) Plaintiff has failed to allege a public benefit that would allow it to sue under Minnesota's Private Attorney General statute, Minn. Stat. § 8.31. Because the Court finds that Dart Transit is a sophisticated merchant, rather than a consumer, it finds dismissal is appropriate based on Paccar's second argument and does not reach the other two.

---

[7] Because the Court concludes that the disclaimer of implied warranties supports dismissal of these claims, the Court does not address Paccar's alternative argument that the claims are barred by the statute of limitations.

The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that other rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1. To state a claim that a defendant violated the statute, a plaintiff must plead that the defendant engaged in conduct prohibited by the statute. *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 12 (Minn. 2001). A plaintiff must allege (1) a public benefit, and (2) a misrepresentation that is a violation of the statute. *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1016 (D. Minn. 2012); G*rady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 936 n.2 (D. Minn. 2022) ("Plaintiffs bringing claims under the MCFA must . . . sue under Minnesota Statute Section 8.31 subdivision 3a. . . . To do so, they must allege that their cause of action benefits the public."). A plaintiff can allege either an affirmative misrepresentation of a material fact or a failure to disclose a material fact that the defendant had a duty to disclose (i.e., a fraudulent omission). *Graphic Commc'ns Loc. 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 850 N.W.2d 682, 695 (Minn. 2014).

The Minnesota Supreme Court has observed that the "[M]CFA is remedial and should be liberally construed in favor of protecting consumers," and it is designed "to protect a broad, though not limitless, range of individuals from fraudulent and deceptive practices." *Ly v. Nystrom*, 615 N.W.2d 302, 309, 310 (Minn. 2000). However, that same court "has distinguished between an ordinary consumer and a merchant, defined in the Uniform Commercial Code as 'a person who deals in goods of [that] kind." *Tisdell v.*

*ValAdCo.*, No. C0-01-2054, 2002 WL 31368336, at *10 (Minn. Ct. App. Oct. 16, 2002) (quoting *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 7 (Minn. 1992), *overruled on other grounds*, *Ly*, 615 N.W.2d at 314 n.25). Thus, when a party has expertise in a particular industry because it deals in goods of the kind at issue, or holds itself out as having "knowledge or skill peculiar to the practices or goods involved in the transactions," it will fall within the UCC's definition of merchant, and the MCFA does not apply. *Solvay Pharm., Inc. v. Global Pharm.*, 298 F. Supp. 2d 880, 887 (D. Minn. 2004); *see also Huntting Elevator Co. v. Biwer*, No. C9-98-548, 1998 WL 747170, at *2 (Minn. Ct. App. Oct. 27, 1998) ("The producer acted as a merchant in selling his grain products to the grain elevator. Under these circumstances, the producer is barred from asserting a cause of action under the Consumer Fraud Act."); *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1069–70 (D. Minn. 2003) (finding that the plaintiffs qualified as "merchants under Minnesota law" and dismissing their MCFA claim as a result).

Following these authorities, the Court finds that Dart Transit is a merchant under Minnesota law, and therefore, it cannot pursue a claim against Paccar under the MCFA. As discussed above, Plaintiff's own Complaint shows that it is a merchant within the meaning of the UCC. *See* Minn. Stat. § 336.2-104(1). Plaintiff alleges that it operates a fleet of commercial trucks, that it has been a loyal Paccar customer for decades, and that it has purchased hundreds of trucks from Paccar. With respect to just the claims at issue in this case, Dart Transit alleges that it purchased nearly 500 trucks from Paccar between 2017 and 2020, which constitute a part of its trucking fleet. The only reasonable inference

to be drawn from these factual allegations is that Dart Transit deals in goods of the kind—commercial trucks—which makes it a merchant under Minnesota law. Accordingly, the Court finds that Dart Transit fails to state a claim under the MCFA and that claim is dismissed.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1.    Defendants' Motion to Dismiss (Doc. 14) is **GRANTED IN PART** and **DENIED IN PART** as set forth in this Order.

2.    Defendants Paccar Engine Company, Kenworth Truck Company, and Peterbilt Motors Company and all claims against them are **DISMISSED** from this action.

3.    The motion is **DENIED** to the extent it seeks dismissal of Plaintiff's breach of express warranty claims.

4.    Plaintiff's claims for consequential damages are **DISMISSED**.

5.    Plaintiff's claims for breach of implied warranty are **DISMISSED**.

6.    Plaintiff's claims under the Minnesota Consumer Fraud Act are **DISMISSED**.

Date: February 25, 2025                    *s/Katherine Menendez*
                                           Katherine Menendez
                                           United States District Judge